IN THE
UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MARYLAND

GARY FRICK
12624 Winter Wren Court
Herndon, VA 20171,

    *Plaintiff,*

vs.                      Civil Action # _____

THE MITRE CORPORATION
300 Sentinel Drive
Suites 500 & 600
Annapolis Junction, MD 20701

    Resident Ag
    THE CORPORATION TRUST, INC.
    2405 York Road, Suite 201
    Lutherville-Timonium, MD 21093-2264,

    *Defendant.*

-o0o-
**COMPLAINT**

**COUNT I**
**RELIGIOUS DISCRIMINATION**
**TITLE VII, 42 U.S.C. § 2000e *et seq.***
(Jury Trial Requested)

Plaintiff, GARY FRICK (hereinafter "Plaintiff"), by and through his attorneys, Francis J. Collins, F.J. Collins Law, LLC and P. Matthew Darby, Darby Law Group, LLC, hereby sues Defendant THE MITRE CORPORATION (hereinafter "MITRE"), and, in support thereof, states as follows:

1

## I. INTRODUCTION

1.      Plaintiff was employed by MITRE from 2006 to November 2021.

2.      Plaintiff was one of a large group of employees of MITRE terminated because he and the other employees refused to comply with a COVID-19 vaccine mandate imposed by MITRE.  Plaintiff was a long-term employee with excellent credentials and job performance and as part of Plaintiff's duties provided important services to the U.S. government, mostly in military defense for the Department of Defense.  MITRE instituted its own internal company-wide vaccine mandate on August 16, 2021, two months before the federal mandate through President Biden's executive orders.  MITRE migrated from testing for negative COVID results before entering MITRE spaces to mandatory vaccine compliance before entering company spaces. In August 2021, MITRE instituted a company-wide vaccine mandate, requiring Plaintiff to submit proof of vaccination against COVID-19 as a condition of employment or apply for and obtain an approved medical or religious exemption. All MITRE employees had to upload proof of vaccination by November 15, 2021. All religious and medical exemptions had to be approved by November 21, 2021 after which the employee was marked for immediate termination.

3.      During the fall of 2021, Plaintiff applied for an exemption to the MITRE mandate, seeking reasonable accommodations of his sincerely held religious beliefs, practices, and/or observances.

4.      MITRE refused to grant an exemption to the Plaintiff and nearly all of the employees who requested an exemption, in violation of Plaintiff's rights under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e, *et seq.*

5.      As more fully described below, Plaintiff has bona fide religious beliefs that conflict with MITRE's employment requirement—that employees be vaccinated against COVID-19 and upload proof of that vaccination (the "vaccine mandate") to MITRE's server.  Plaintiff informed MITRE of his bona fide religious beliefs that conflict with the vaccine mandate and requested a religious accommodation—specifically the right to forego the COVID-19 vaccines, and that request was refused.  Plaintiff and many other employees were fired for not complying with MITRE's vaccine mandate and was not offered reinstatement after MITRE ended the vaccine mandate.  Plaintiff was considered ineligible for reinstatement because he failed and refused to comply with MITRE's vaccine mandate, even long after the mandate was rescinded or should reasonably have been rescinded.  MITRE fully understood at the time, that the federal mandate to comply by November 2021 was challenged by the courts, and an injunction was in place.  The federal mandate was moved to January 2022, and MITRE was not compelled to enforce the vaccine mandate.  MITRE pursued its own internal business rules to remove its employees.

## II. JURISDICTION

6.      Plaintiff has fulfilled the jurisdictional requirements of Title VII by

3

filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and receiving a Right to Sue letter from EEOC, in compliance with 42 U.S.C. § 2000e-5(f)(1). MITRE is subject to the provisions of Title VII, as it employs more than fifteen employees under 42 U.S.C. § 2000e(b). This Court has original subject matter jurisdiction over this action, as the claims therein arise under the laws of the United States, pursuant to 28 U.S.C. § 1331.

7. At all times relevant to this case, MITRE had at least seven separate business locations in the State of Maryland, not including the various locations of employees who continued to work remotely for MITRE within the State of Maryland.

### III. PARTIES

8. Plaintiff was, at all relevant times, an employee of MITRE until he was fired or constructively fired on or about November 22, 2021.

9. MITRE is a large organization, employing thousands of individuals across the country. It is considered a Federally Funded Research and Development Center ("FFRDC") and receives all or virtually all of its funding from the U.S. government. MITRE operates the federal government's Health FFRDC on behalf of sponsors across the Department of Health and Human Services. The federal government pays MITRE billions of dollars each year to support its operations. MITRE sees itself as a leader in public health and seeks federally funded research and development opportunities. During the height of the COVID-19 epidemic, the

federal government had tasked MITRE to stand up a COVID taskforce to work with industry, government, UARCs, and FFRDCs to provide policy recommendations and tools to improve COVID response and address disinformation/misinformation surrounding the COVID and vaccinations.  MITRE had vested interest in ensuring that its recommendations and tools provided were implemented and promulgated in the government. As such, it stands in a direct conflict of interest when it recommends public health programs to the federal government and then benefits from those programs.  In the context of this case, that conflict of interest colored its decision-making.  MITRE was more interested in gaining recognition and currying favor with the then current Executive Branch of the Federal Government than it was in protecting the religious freedoms of its employees.

## IV. FACTUAL ALLEGATIONS

### A. The Job of the Plaintiff

10.    When the COVID-19 pandemic was declared in and around March 2020, MITRE instituted a work-at-home policy for most of its employees.  It was able to continue doing business in much the same way it had been doing prior to the pandemic.  Many of its employees already worked full-time or part-time from home even before the pandemic.  Furthermore, MITRE had a long-standing telework option for its employees.  It was a unique feature of the company that drew many people to apply and work for the company.  Many employees had their telework agreement modified in order to enforce its employees to be in the office and therefore

must be vaccinated. Other employees worked at client sites, such as Department of Defense buildings, and continued to appear at those sites, employing the required masking, testing, and social distancing protocols. In short, MITRE was able to continue billing and performing its services for the federal government with little or no interruption. The need to enter MITRE worksites, as opposed to working from home or at a client site, was minimal at most. The client worksites did not impose a vaccine mandate and those employees that did work at a client worksite were able to continue work as normal, with the minor exception of wearing a mask, occasional COVID-19 testing, and social distancing, which Plaintiff was willing to do. No MITRE client (various departments of the U.S. government) insisted on MITRE employees being vaccinated and the government employees at those sites, and who worked in close proximity with the Plaintiff, were not required to be vaccinated. Regardless, under Title VII, all vaccine mandates by employers must include an exemption process for employees who oppose vaccination because of the employee's religious beliefs.

11. The physical requirements of the job of the Plaintiff are largely limited to desk work and operating a computer. Plaintiff was willing and able to engage in measures understood to ameliorate the risk of spreading COVID-19 such as working from home, wearing a mask, social distancing, and undergoing frequent COVID-19 testing. His job generally could be performed away from other people. Plaintiff rarely, if ever, engaged in meetings with the general public and all of his meetings

with co-workers and the client's workers could be done either remotely or while utilizing the above-described disease prevention techniques.

12. In October 2021 and into November 2021, MITRE required all employees to become "fully vaccinated." MITRE did not consider whether its employees were working remotely at home, at a MITRE site, or at a client site. MITRE did not consider whether vaccination impacted the employee's ability to perform assigned work, interact with co-workers, accomplish work goals, or otherwise derive a benefit from the vaccination. MITRE ignored the fact that the government workers with whom Plaintiff interacted and worked were not necessarily vaccinated. Plaintiff was not engaged in frequent contact with the public. Plaintiff was not at greater risk than the public at large for contracting or spreading COVID-19.

13. Plaintiff's ability to perform the essential functions of his job was not impaired by his status as unvaccinated. There was no objectively reasonable basis for MITRE to believe that Plaintiff was unable to carry out the essential functions of his job. With COVID-19 precautions in place, he could safely perform his job function as he had been doing for the prior 20 months.

14. COVID-19 is not an occupational hazard that has any particular relationship to the job duties of the Plaintiff. Rather, it is a disease or medical condition that arises as a result of living in the 21st century, not unlike other communicable diseases such as the flu, the common cold, HIV, and leprosy.

Plaintiff's job duties did not bring him into contact with immuno-compromised medical patients.

### B. MITRE'S Vaccine Mandate

15.    On October 11, 2021, MITRE CEO Jason Providakes announced, on his weekly video call with all staff, that MITRE would adopt a mandatory vaccination policy for all its employees as a condition of employment, effective on or about November 22, 2021.  Mr. Providakes contended at that time that the company mandate was in response to the executive order.  When discussing religious and medical exemptions, Mr. Providakes called them "two very limited circumstances" and required employees who had already submitted exemption requests to resubmit so that they may be put through a "rigorous process."

16.    Later that day, Mr. Providakes and Kathleen Federico, Senior Vice President, emailed MITRE's staff further outlining the new vaccination policy. Under that policy, vaccinated employees were required to upload proof of their vaccination into MITRE's Workday platform between October 25, 2021, and November 15, 2021.  The policy was updated to require unvaccinated employees to upload proof of vaccination no later than November 21,2021.  The updated policy further required that employees seeking an exemption from the mandate because of a documented medical condition, disability, or sincerely held religious belief submit a request for reasonable accommodation no later than October 22, 2021.  If MITRE granted an employee reasonable accommodation, the employee could submit proof

thereof to Workday to fulfill the requirements of the new policy.

## C. CEO Jason Providakes' Public Statements

17.    Mr. Providakes made statements disparaging employees who objected to the vaccine mandate, created a hostile work environment for those same employees, namely, anyone who did not want to be vaccinated, by expressing contempt for employees who did not want to be vaccinated.  In the October 11, 2021, video call, Mr. Providakes stated that he could "live with" the outcome, if MITRE lost 10 percent of its employees due to noncompliance with its vaccine requirement.

18.    On October 18, 2021, in another weekly call with staff, Mr. Providakes made statements discouraging employees from seeking exemptions to the vaccine mandate.  With respect to medical exemptions, Mr. Providakes stated, "cautionary note … there is a very narrow window for that." With respect to religious exemptions, Mr. Providakes stated, "If your religion does not have a vaccination [sic], that says do not do vaccinations, it can be very hard to put together a case.  You cannot just wake up in the morning and decide the religious conviction that you automatically get an exemption, so there is a high bar to process that goes through [sic] regarding a firm belief on that." Referring to MITRE's duty to accommodate, Mr. Providakes stated, "…And once those two things are done, and you do get an exemption, it is something called reasonable accommodation.  Be clear on what a reasonable accommodation means.  It means you are not coming into the MITRE space.  It means you will be assigned work appropriate with what you can do

remotely, at home, which is really important for that one. Your role may change as well. That is what reasonable accommodation, quote, means for a private company and a private employer."

19. In these October 18, 2021, statements, Mr. Providakes mischaracterized employees' protections under Title VII and MITRE's obligation to provide reasonable accommodations. Mr. Providakes also indicated to employees that any requests for reasonable accommodation would be futile. Mr. Providakes further suggested that MITRE would retaliate against any employees who sought and obtained reasonable accommodation.

20. In all of Mr. Providakes' video addresses to staff, he displayed contempt for employees who objected to receiving the vaccine, speaking about them in a condescending tone.

21. At no time did MITRE provide any significant level of transparency regarding its internal policies and procedures for employees to apply for exemptions or about its internal policies and procedures for granting exemptions. When it denied the exemptions to the Plaintiff, MITRE failed to explain its reasoning and provided an unsigned denial letter that did not provide a right to appeal. At no time did MITRE ever articulate that it was denying the accommodation request because Plaintiff was motivated by reasons that MITRE did not consider religious in nature.

**D. Plaintiff's Request for Exemption - Religious Accommodation**

22.    Plaintiff's Director advised Plaintiff and other employees working under him that all MITRE employees would have to receive the vaccine ("get injected") or they would be terminated. He did not offer the possibility of a religious exemption.

23.    Plaintiff has considered himself a conservative and staunch practicing Catholic all of his life. He participated in church groups such as the Knights of Columbus that promote works of charity. He is a member of a cenacle prayer group that meets once a week. As such, members of the group take turns hosting these gatherings in our homes. Plaintiff supports moral causes such as Right to Life. The tenets of his faith as a Catholic are dictated by catechism of the Catholic church. As such, Plaintiff takes very seriously any matters that require decisions that involve the use of fetal cells from aborted babies or embryos. Plaitiff evaluates matters that could potentially involve harm to his person or those of his loved ones, in light of what duties or options are provided to him, his doctrine of faith, or any other references, by the Catholic church that help facilitate guidance and decisions. From that sense of morality, he forms value judgments that affect his entire life and decisions about life. Plaintiff is opposed to abortion, in favor of telling the truth, opposed to adultery, knows the difference between right and wrong, and believes that his moral choices matter to both him and others. As stated to MITRE at the time of his termination, directly because of his religious convictions, he considers the

11

COVID-19 vaccines immoral. Plaintiff's reasons for this conviction are largely rooted by the tenets of his faith derived from the catechism of the Catholic church, the Congregation for the Doctrine of the Faith (CDF) and other like references. As such he takes very seriously any matters that require decisions that involve the use of fetal cells from aborted babies or embryos for research or vaccine development. His family has not taken the flu shot or any other form of vaccine once they were made aware of these practices. And he evaluates matters that could potentially involve harm to him or his family and loved ones. As part of that, Plaintiff considers the guidance provided to him by the CDF and any other references by the Catholic church that help him form his conscience. The decision about whether to be vaccinated was directly influenced by his religious beliefs and his religious moral code. As a Catholic, his belief is that that he has the ability to pray to God for guidance in all things. Plaintiff did that in this case and does it consistently in his life about all important matters. That prayer influences his life. Moreover, his religion has many dogmas, doctrines, moral teachings that influence his life, not the least of which are the Ten Commandments. He believes that being vaccinated violates the Ten Commandments and his personal religiously founded conscience.

24. Plaintiff requested to be exempt from the vaccine mandate, as a reasonable accommodation of Plaintiff's sincerely held religious beliefs. MITRE insisted that employees requesting religious accommodation sign, verify, and submit a particular form that MITRE drafted. Under Title VII, there is no requirement that

employees submit such a form in order to be eligible for a religious exemption.

25.    Plaintiff submitted his request on the form provided by MITRE.  The form that MITRE circulated for use by its employees contained the following statements and requests.  It requires that the employee sign a verification as to the employee's religious beliefs.  It requires the employee to sign a verification that MITRE will attempt to provide a reasonable accommodation.  It requires the employee to sign a verification that the employee understands that accommodation will be denied if it creates an undue hardship for MITRE.  It requires the employee to sign a verification that the employee understands that MITRE may periodically review the accommodation to determine later if it would result in an undue hardship.

26.    In the form, MITRE threatened to discuss the form with the employee, thereby challenging the employee's sincerity even before MITRE reviewed the request and before MITRE could have obtained an objective basis to believe the employee was insincere.  In the form, MITRE also promised to conduct an interactive process.  MITRE never conducted the interactive process, but it did insist on conducting a discussion with the employee about the employee's religious beliefs.

27.    MITRE's exemption request form and its practices did not comport with a proper consideration under Title VII of a religious exemption request. MITRE was intent upon denying the requests and began conducting interviews of employees and, without forewarning, began asking them to explain the religious

nature of their objection to the vaccine. It began asking the employees to explain the religious dogma, belief, religious texts, or moral basis for the objection. MITRE focused on the sincerity of the employees' beliefs even before it had an objective basis for doubting the employees. The form asked the employees to "include enough detail so that MITRE can determine that these beliefs are sincerely held and consistently guide and influence the employee's life." This demand from MITRE is inherently a violation of Title VII. The events of the pandemic had never been experienced before during Plaintiff's lifetime so that employees were not able to show a prior practice as it relates to beliefs that consistently guide and influence the employee's life with regard to vaccination and pandemics. Title VII does not allow an employer to deny accommodation based on the employer's assessment that the employee's religion does not "consistently guide and influence the employee's life."

28. Despite the ambiguity of MITRE's form, when MITRE's representative contacted Plaintiff, Plaintiff did explain that Plaintiff' religious beliefs and practices, such as prayer, led him to conclude that vaccination was immoral and not in conformity with his religiously based moral codes.

29. MITRE denied this Plaintiff and other employees accommodation because, among other illegal considerations, it unilaterally determined that the employee's beliefs were not religious in nature. But the form that MITRE demanded be used did not ask the Plaintiff to explain how or why his religious beliefs were religious in nature. At no time after the accommodation request was filed did

14

MITRE engage in a discussion with the Plaintiff to explore whether the objection to the vaccine was religious or secular.

30. MITRE denied the accommodation requests of all employees who articulated secular reasons in addition to religious reasons despite the fact that binding legal authority is clear that a person may simultaneously have both secular and religiously based opposition to the vaccines and the existence of secular reasons does not take the opposition out from under Title VII protections.

31. Plaintiff was willing to engage in disease mitigation measures such as masking, social distancing, remote working, or such other measures requested by MITRE. Plaintiff was not willing to submit to a COVID-19 vaccine but was willing to consider any other reasonable requests by MITRE.

32. MITRE never interviewed Plaintiff over the phone after he submitted his written exemption requests. Plaintiff submitted his exemption request and followed up with a detailed outline of his religious objections and justifications. He offered to address any concerns that MITRE had. MITRE refused to address these issues in writing or on a recorded call and MITRE showed no inclination to provide Plaintiff with Plaintiff's requested accommodation and did not discuss alternative accommodations.

33. MITRE did not accept that employees could have a sincere conscientious and religious objection to the vaccine. In fact, however, at about that same time, MITRE was aware through media reports and its own investigations that

15

around 20 percent of Catholics and other Christians opposed the COVID-19 vaccination – because of their religious beliefs. Around the same time, it was reported in the publicly available media that approximately 10% of Americans were of the view that the COVID-19 vaccines conflicted with their religions. This 10% report correlated with the statement by CEO Providakes that he was willing to lose 10% of MITRE's workforce because of the vaccine mandate MITRE was imposing. It could not have surprised MITRE that a large number of its employees were similarly opposed to the vaccines for religious reasons and if MITRE was acting in good faith and was trying to determine which employees were opposed for secular reasons, rather than religious reasons, it could have made further inquiries, but it chose not to.

34.    As explained above, Plaintiff articulated religious objections to the COVID-19 vaccines centered on the role of human embryonic stem cell products used in the development and/or production of the vaccines. The pharmaceutical industry's use of embryonic stem cells derived from aborted fetuses is a longstanding and widespread concern voiced by religious adherents that predates the COVID-19 vaccines. *See* e.g., Alvin Wong, *The Ethics of HEK 293*, Nat'l Catholic Bioethics Quarterly 473 (Autumn 2006).

35.    The cell lines sold under the trade names HEK 293 and PER.C6 are derived from the cells of human fetuses. The vaccines available in October and November 2021 were developed and/or produced using those cell lines. Plaintiff

16

objected specifically because, in Plaintiff's view, utilizing a product that was developed and/or produced using cell lines derived from aborted fetal tissue, even years after the tissue was obtained, is participation in, and encouragement of, evil. In raising the issue of aborted fetal tissue cell lines, Plaintiff was articulating a religious view that use of such cell lines constitutes a violation of Plaintiff's religious tenets.

36.    MITRE never articulated at the time it was terminating Plaintiff that it viewed Plaintiff's objection to the vaccine as being purely secular and unrelated to religion.  That argument was not raised until months later and is a *post hoc* rationalization rather than MITRE's true reasoning.  Regardless, a coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one.

37.    Where the accommodation request itself does not provide enough information to enable the employer to make a determination, and the employer has a *bona fide* doubt as to the basis for the accommodation request, it is entitled to make a limited inquiry into the facts and circumstances of the employee's claim that the belief or practice at issue is religious and sincerely held, and that the belief or practice gives rise to the need for the accommodation.  In this case, MITRE did not ask the Plaintiff for a more detailed written explanation of his religious opposition to the vaccine or inform him that it did not understand the religious nature of his opposition.

17

38.    When Plaintiff filed for a religious exemption, MITRE did not start from the position that his religious views were sincerely held unless there was objective evidence to prove otherwise, as required under Title VII.

39.    Instead, MITRE set out with a plan to undermine, question, dispute, and reject the stated objections articulated by Plaintiff.  MITRE rejected the requested religious exemption without explaining the basis for doing so and without any discussion regarding the religious principles involved, the overlap of those principles with secular concerns, and without any explanation that would have prompted the Plaintiff to address MITRE's concerns.

40.    Title VII defines religion capaciously to include all aspects of religious observance and practice, as well as belief.  An employer may only make limited inquiries into those beliefs if it has an objective basis to believe the employee is dissembling.  If there is an objective basis for undertaking an inquiry into an employee's religious beliefs, the only proper inquiry under Title VII must be limited to: 1. whether the beliefs professed by the employee are sincerely held and, 2. whether they are, in the employee's own scheme of things, religious.

41.    Employers have a limited function in determining whether religious beliefs are protected.  The determination of what is a "religious" belief or practice is a difficult and delicate task that should not be undertaken by a religiously uneducated employer with no knowledge of the Plaintiff's religion.  The scope of what is protected by Title VII is understood to be, without qualification, governed by a

18

highly subjective definition of religion, which examines an individual's inward attitudes towards a particular belief system. By basing its decision on a simple and uniform form that MITRE issued, without any follow-up, MITRE demonstrated antagonism toward religiously motivated employees and intentionally closed its eyes and mind to the good faith statements contained in the religious accommodation request forms.

42. MITRE failed to follow its own internal policies for evaluating a request for religious accommodation. In the case of this Plaintiff, and many other employees, MITRE failed and refused to complete its own form which contains a space for the employer to explain why the employee could not be accommodated. The MITRE form verified by the employee calls on the MITRE representative denying the accommodation to fill out the form explaining when the interactive process took place, the documentation that was presented and reviewed, the accommodation requested, any alternatives considered, a detailed explanation of why the accommodation was denied and the date when that denial was discussed with the employee. MITRE never completed that form and never performed those tasks and thereby did not follow its own policies and procedures. That failure is evidence of MITRE's violation of Title VII.

43. The fact that MITRE interviewed Plaintiff without prior evidence of a lack of sincerity constitutes a violation of Title VII. If MITRE was concerned that Plaintiff was dissembling about Plaintiff's religious beliefs or objecting to

vaccination because of purely secular reasons, it never placed Plaintiff on notice of that concern, never asked about such matters, and never articulated that concern to its employees, or anyone else.

**E. Plaintiff's Ability to Work Remotely as a Reasonable Accommodation**

44. The fact that many of its employees worked remotely, even before the pandemic, demonstrates that MITRE could have accommodated Plaintiff with ease.

45. Since the advent of the COVID-19 crisis in March 2020, Plaintiff worked remotely, generally from his home or off-site, on a full-time or part-time basis.

46. Prior to March 2020, Plaintiff worked remotely or off-site. Many other MITRE employees also worked remotely or off-site before COVID-19, underscoring how a return to MITRE could easily be accomplished, even if the company returned to pre-COVID policies regarding in-person work. MITRE did not return to pre-COVID policies regarding in-person work at any time relevant to this case.

47. MITRE could have easily accommodated the requests of Plaintiff, who already worked remotely by simply allowing him to continue to do so. If required to work in-person at some point, MITRE could have accommodated Plaintiff by allowing him to wear a face mask, maintain social distancing, and submit to regular COVID-19 tests. These mitigation procedures had been in place for 20 months and MITRE was able to accomplish its business objectives. The clients of MITRE were

20

not insisting that MITRE employees be vaccinated and had not imposed a vaccine mandate of their own.

### F. Plaintiffs' Involuntary Termination of Employment

48. On or about November 21, 2021, MITRE terminated Plaintiff. Plaintiff would not have left his employment with MITRE at that time.

49. After his termination, Plaintiff unjustly suffered economic losses including, but not limited to loss of salary, employment benefits, pension benefits and other perquisites of employment.

### G. MITRE's malicious intent and intentional disparate treatment

50. MITRE corporate leadership is anti-religious in its outlook. As part of this outlook, MITRE corporate leadership has shifted its traditional neutral and unbiased think tank focused on technology development in the defense sector to a more socially acceptable think tank focusing on such things as health and human service projects or more socially conscientious initiatives such as DEI. These focuses have shifted the company from a neutral position to a more politically and religiously polarized environment, where initiatives within the company came into direct conflicts with positions held by religious employees with deeply held beliefs or by the conservative employees, or both.

51. Prior to the summer of 2021, Plaintiff carefully avoided bringing religious and political discussions into the workplace. Plaintiff performed his duties

without regard for his own religious and political leanings. As a result, MITRE was unaware of Plaintiff's belief systems until that time.

52.    In the fall of 2021, MITRE demanded that all employees expose their religious and political leanings by either being vaccinated or by filing for a religious and/or medical exemption. The mere act of filing for a religious exemption exposed Plaintiff's religious view and, by implication, political views, to the scrutiny of MITRE management. Before that time, MITRE had no way of learning the religious and/or political views of its employees.

53.    By forcing employees who opposed the vaccine to divulge that opposition, MITRE essentially "unmasked" its conservative religious employees in a way that left Plaintiff vulnerable to judgment, ridicule, and isolation from his vaccinated coworkers.

54.    MITRE was aware that persons who opposed the vaccination mandate tended to hold conservative religious views. MITRE knew that, if it issued a vaccination mandate and did not honor religious exemption requests, terminating employees for refusing the vaccination would have a disparate impact on employees holding conservative religious views. Armed with that knowledge, MITRE intentionally planned the mandatory vaccination policy with the conscious intention of eliminating employees with conservative religious views. It undertook this plan with malice and/or reckless indifference to the federally protected rights of the employees holding those views.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

a.  For Plaintiff to be reinstated to his position or a similar one and receive all economic losses resulting from the unlawful termination, including but not limited to back pay, liquidated damages, front pay, reinstatement of accrued benefits including but not limited to sick pay, pension accrual, vacation pay, FICA contributions and other employment benefits, in an amount that exceeds $75,000.

b.   For MITRE to be enjoined from further illegal discriminatory acts against Plaintiff.

c.  For Plaintiff's other non-economic and economic losses both retrospective and prospective as proved at trial including, but not limited to, damages resulting from mental anguish and economic hardship of an amount more than $75,000.

d.  For punitive damages in excess of $75,000,

e.  For the cost of this suit and reasonable attorney's fees, including under 42 U.S.C. § 1988; and

f.  For other and further relief as may be requisite.

Respectfully submitted,

**F.J. COLLINS LAW, LLC**

_/s/ Francis J. Collins_
Francis J. Collins, Esq.
(Bar # 04272)
(AIS # 8501010118)
fj@fjcollinslaw.com

23

3015 Wooded Knoll Court, Suite 200
Ellicott City, MD 21042
(240) 799-1212 Telephone
(240) 253-1212 Facsimile


**DARBY LAW GROUP, LLC**

*/s/ P. Matthew Darby*
P. Matthew Darby, Esq.
(Bar #: 05980)
(AIS # 8812150131)
201 International Circle, Suite 500
Hunt Valley, MD 21030
matt@darby-lawgroup.com
(833) 601-7245 Telephone
(667) 770-6660 Facsimile
*Co-Counsel for Plaintiff*

## PRAYER FOR JURY TRIAL

Plaintiff, by his attorneys, Francis J. Collins and P. Matthew Darby, prays to have this case tried by jury.

*/s/ Francis J. Collins*
Francis J. Collins, Esq.

*/s/ P. Matthew Darby*
P. Matthew Darby, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2026, a copy of the foregoing Complaint was served via the Court's Electronic filing system and emailed to:

Christine Costantino, Esquire
Ray Baldwin, Esquire
Seyfarth Shaw LLP

25

975 F. Street NW
Washington, DC 20004

*/s/ Francis J. Collins*
Francis J. Collins, Esq.